Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| E.M.I. EQUITY MORTGAGE, INC. COMO AGENTE DE SERVICIO DE FORTALEZA EQUITY PARTNERS I, LLC<br><br>Recurrida<br><br>v.<br><br>ZAIDA IRIS DÁVILA HERNÁNDEZ T/C/C ZAIDA DÁVILA HERNÁNDEZ Y OTROS<br><br>Peticionaria | KLAN202500433 | ***Apelación acogida como CERTIORARI*** procedente del Tribunal de Primera Instancia, Sala Superior de Fajardo<br><br>Caso Núm.: FA2022CV00646<br><br>Sobre: Cobro de Dinero y Ejecución de Hipoteca |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Martínez Cordero y el Juez Cruz Hiraldo.

*Martínez Cordero, jueza ponente*

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 13 de junio de 2025.

Comparece Zaida Iris Dávila Hernández (en adelante, peticionaria), mediante un recurso apelativo para solicitarnos la revisión de la *Resolución* emitida el 8 de abril de 2025,[1] y notificada el 14 de abril de 2025,[2] por el Tribunal de Primera Instancia, Sala Superior de Fajardo. Mediante la *Resolución* recurrida, el foro de instancia declaró *No Ha Lugar* un escrito presentado por la peticionaria intitulado *Urgente oposición a solicitud de ejecución de sentencia; en solicitud de que se deje sin efecto la sentencia parcial dictada sin jurisdicción; moción de desestimación por falta de acumulación de parte indispensable y sobre otros asuntos.*

Por los fundamentos que expondremos, se *deniega* la expedición del auto de *certiorari*.

---

[1] Apéndice del recurso, a la pág. 149.
[2] Véase el Sistema Unificado de Manejo y Administración de Casos (SUMAC), a la Entrada 230.

Número Identificador

RES2025_____

I

Comenzamos por puntualizar que, en el presente caso, se han emitido cinco (5) sentencias parciales, de las cuales, la última fue notificada el 18 de diciembre de 2024,[3] por lo que al momento de la presentación del recurso ante nos, la misma era final y firme. Con lo anterior en mente, procederemos a relatar los hechos atinentes al recurso ante nuestra consideración, el cual, según adelantamos, mediante *Resolución* emitida por este Tribunal, fue acogido como uno de *Certiorari.*

El presente caso tuvo su inicio cuando E.M.I. Equity Mortgage, Inc., como Agente de Servicio de Forteza Equity Partners I, LLC (en adelante, E.M.I. y/o parte recurrida), instó una *Demanda* sobre cobro de dinero y ejecución de hipoteca contra la aquí peticionaria.[4] Como parte de la demanda, la parte recurrida incluyó como parte con interés a Dan Charles Belsky, Karen Lizbeth López y a la sociedad legal de bienes gananciales compuesta por ambos (Matrimonio Belsky-López). En el escrito, adujo que la peticionaria suscribió un pagaré a favor de Doral Bank y, en aseguramiento de este, constituyó una hipoteca voluntaria mediante escritura pública. Esbozó que la antedicha hipoteca fue presentada ante el Registro de la Propiedad y al momento de la presentación de la demanda se encontraba pendiente de calificación. Alegó ser tenedor de buena fe del pagaré objeto de la reclamación, puesto a que lo adquirió por valor recibido y/o por endoso en el curso ordinario de sus negocios. Expresó que se incluyó al Matrimonio Belsky-López como parte con interés, por ser los titulares registrales de la propiedad objeto de ejecución al momento de la radicación del caso. Acotó haber realizado gestiones para obtener el pago de las sumas reclamadas en su pliego, resultando dichas gestiones infructuosas, por lo que

---

[3] Apéndice del recurso, a las págs. 126-127.
[4] *Íd.*, a las págs. 1-4.

declaró la deuda vencida, líquida y exigible. A tenor, solicitó que: (i) se declarara *Ha Lugar* la demanda; (ii) se condenara a la peticionaria a satisfacer las partidas reclamadas; (iii) se determinara que la parte tenía un gravamen hipotecario sobre la propiedad en cuestión, y (iii) una vez quedara inscrita la hipoteca, se ordenara la venta en pública subasta de la propiedad, para aplicar el importe de la venta al saldo de la deuda, incluyendo los gastos de la venta judicial y la suma pactada para costas, gastos y honorarios de abogado. Además, peticionó que, de quedar algún remanente del importe de la venta de la propiedad, este fuese consignado y, luego, se ordenara la venta y ejecución de cualesquiera otros bienes de la peticionaria, hasta satisfacer cualquier deficiencia o parte insoluta de la sentencia que en su día se emitiera.

Luego de varios incidentes procesales, innecesarios pormenorizar, el Matrimonio Belsky-López incoó una *Demanda contra terceros y contra coparte*.[5] En su pliego, el cual versa sobre daños y perjuicios, demandó a la aquí peticionaria, quien ya era parte del pleito. Además, incluyó como terceros demandados al Banco Popular de Puerto Rico (BPPR), a Milagros Cuevas Torres, Inc. y a los abogados notarios Ricardo Rangel (Rangel) y Néstor Machado Cortés (Machado Cortés). Igualmente, incluyó a las compañías de seguro ABC, DEF, GHI y XYZ, et al. Adujo, en síntesis, que BPPR había realizado tres (3) estudios de título y que no aparecía ninguna hipoteca a favor de Doral Bank (ahora E.M.I.), de manera que, había adquirido la propiedad libre de gravámenes, como terceros adquirentes de buena fe. Por otro lado, razonó que la aquí peticionaria había suscrito un pagaré a favor de la antedicha entidad y se lo ocultó, y que BPPR y Milagros Cuevas Torres, Inc. eran responsables por hacer representación falsa de que la propiedad

---

[5] Apéndice del recurso, a las págs. 11-15; Véase el SUMAC, a la Entrada 71.

estaba libre de gravámenes. Asimismo, alegó que los notarios Rangel y Machado Cortés eran responsables por haber autorizado la escritura de compraventa bajo la representación de que la propiedad estaba libre de gravámenes. A tales efectos, esbozó que dichas partes habían sido negligentes, por lo que debían responder en daños y perjuicios. En consideración a lo expuesto, solicitó que se declarara *Ha Lugar* la demanda contra coparte, así como la demanda contra tercero, y, en consecuencia, condenara al BPPR, a Milagros Cuevas Torres, a los abogados notarios Rangel y Machado Cortés, así como a las compañías de seguro y a la aquí peticionaria, de forma mancomunada y solidariamente, a pagarle una suma no menor de $3,000,000.00 dólares por concepto de daños económicos, daños mentales y honorarios de abogado.

En reacción, la peticionaria compareció mediante *Contestación a demanda[,] contestación a demanda contra coparte y demanda contra terceros*.[6] Es menester señalar que, en su escrito, presentó su alegación responsiva en torno a la demanda en su contra, así como sus defensas afirmativas e incluyó una reconvención. Por otro lado, incluyó una demanda contra terceros para traer al BPPR, a su aseguradora de nombre desconocido, así como a Milagros Cuevas Torres, Inc. y a su aseguradora de nombre desconocido.

En *primer* lugar, en la contestación, admitió algunas alegaciones, negó otras. En *segundo* lugar, en torno a la reconvención, alegó haber quedado sorprendida con la radicación de la demanda, puesto a que, conforme a su creencia, al realizar el "short sale" de la propiedad, entendió que quedó liberada de toda deuda en torno al inmueble. Acotó que la demanda presentada se hizo en abuso del derecho, de manera que le ha causado daños y

---

[6] Apéndice del recurso, a las págs. 16-28; Véase el SUMAC, a la Entrada 75.

perjuicios estimados en una suma no menor de $100,000.00 dólares. En *tercer* y último lugar, en cuanto a la demanda contra terceros, alegó que todo el proceso del "short sale" de la propiedad fue realizado a través del BPPR. Añadió que la referida institución incurrió en negligencia vicaria, dado a que contrató a la compañía que realizó el estudio de título, entiéndase, Milagros Cuevas Torres, Inc., y que, descansando en esas gestiones, se hizo el cierre, por lo que el Matrimonio Belsky López adquirió la propiedad. Dado a lo anterior, solicitó al foro de instancia que condenara a estos terceros demandados al pago mancomunado y solidario de las sumas reclamadas en la demanda instada por E.M.I., directamente a dicha parte, así como en la demanda contra terceros. Alternativamente, solicitó que los referidos terceros demandados reembolsaran íntegramente cualquier suma que la peticionaria tuviese que satisfacer a cualquier otra parte, más sus propios daños y perjuicios, según reclamados en la demanda contra los terceros demandados.

Así las cosas, E.M.I. instó una *Solicitud de desestimación de reconvención.*[7] Adujo, en síntesis, que la reconvención incoada por la peticionaria dejaba de exponer hechos que justificaran la concesión de un remedio por lo que debía ser desestimada. Acotó que el caso de marras era uno sobre cobro de dinero y ejecución de hipoteca entre un acreedor y un deudor por una deuda vencida, líquida y exigible. Solicitó que la reconvención instada en su contra fuese desestimada con perjuicio.

Subsiguientemente, la peticionaria presentó un documento intitulado *Contestación a demanda contra co-parte.*[8] Algunas alegaciones fueron negadas, otras admitidas y presentó defensas

---

[7] Apéndice del recurso, a las págs. 29-34; Véase el SUMAC, a la Entrada 84.
[8] Apéndice del recurso, a las págs. 35-40; Véase el SUMAC, a la Entrada 96.

afirmativas. Solicitó al foro de instancia se diera por enterado del escrito.

Luego de varios incidentes procesales innecesarios pormenorizar, el BPPR presentó una *Moción de desestimación demanda contra terceros*,[9] en relación con la demanda contra terceros instada por la peticionaria. Esbozó que la causa de acción de acuerdo con la demanda de autos era una exclusivamente sobre cobro de dinero y ejecución de hipoteca, según alegado por E.M.I. Indicó que, a casi dos (2) años de haberse instado la misma, la peticionaria, entre otros reclamos, instó una demanda contra tercero en cuanto a BPPR. Acotó que lo único que alegaba la demanda contra tercero en cuanto al BPPR era que en cierto proceso de "short sale" de la colateral hipotecaria objeto del presente caso el BPPR intervino, y que, de los estudios de título efectuados, no surgía la hipoteca objeto de este caso; de manera que, los estudios de título realizados se hicieron de forma negligente y/o culposa por Milagros Cuevas Torres, puesto a que no incluyeron la hipoteca que se pretendía ejecutar en este caso, por lo que el BPPR respondía, dado a que la compañía que hizo el estudio de título fue contratada por estos. Puntualizó que bajo ningún concepto se podía concluir que la reclamación contra BPPR fue presentada dentro del término prescriptivo aplicable y que las alegaciones no justificaban la concesión de un remedio. Así, pues, solicitó la desestimación de la demanda contra tercero, con perjuicio.

En respuesta, la peticionaria presentó su *Oposición de la tercera demandante, Zaira Iris D[á]vila a moci[ó]n de desestimación radicada por el tercero demandado, Banco Popular de Puerto Rico*.[10] Esbozó, en resumen, que la demanda contra tercero en cuanto al BPPR no estaba prescrita, y que las alegaciones eran suficientes

---

[9] Apéndice del recurso, a las págs. 41-52; Véase el SUMAC, a la Entrada 124.
[10] Apéndice del recurso, a las págs. 72-77; Véase el SUMAC, a la Entrada 167.

para sobrevivir una solicitud de desestimación al amparo de la Regla 10.2 de Procedimiento Civil.[11] Solicitó que se denegara la solicitud de desestimación instada por el BPPR en cuanto a la demanda contra tercero incoada por la peticionaria. En reacción, el BPPR presentó una réplica.[12]

En el interín, Milagros Cuevas Torres, Inc., igualmente presentó una *Solicitud de desestimación*,[13] en torno a la demanda contra tercero instada por el Matrimonio Belsky-López. Su petitorio se basó, en síntesis, en las disposiciones de la Regla 4.3 (c) de Procedimiento Civil.[14] Solicitó, pues, al foro de instancia que emitiera una sentencia parcial, mediante la cual desestimara sin perjuicio la demanda contra tercero presentada en su contra. En reacción, el Matrimonio Belsky-López se opuso mediante *Moción en oposición a la desestimación de la demanda*.[15] Evaluados los escritos, mediante *Sentencia Parcial* emitida el 10 de enero de 2024, y notificada al día siguiente, el foro de instancia desestimó sin perjuicio la demanda contra tercero con relación a Milagros Cuevas Torres.[16]

Igual curso de acción tomó el BPPR en torno a la demanda contra tercero instada por el Matrimonio Belsky-López, al presentar una *Moción de desestimación demanda contra terceros presentada por Dan Charles Belsky, Karen Lizbeth López y la sociedad de gananciales compuesta por ambos*.[17] Su solicitud se basó en argumentos similares a los presentados por Milagros Cuevas Torres, Inc. De igual forma, actuaron Rangel y Machado Cortés cuando

---

[11] 32 LPRA Ap. V, 10.2.
[12] Apéndice del recurso, a las págs. 93-97; Véase el SUMAC, a la Entrada 179.
[13] Apéndice del recurso, a las págs. 53-59; Véase el SUMAC, a la Entrada 132.
[14] 32 LPRA Ap. V, 4.3.
[15] Véase el SUMAC, a la Entrada 141.
[16] Apéndice del recurso, a las págs. 60-63; Véase el SUMAC, a la Entrada 150.
[17] Apéndice del recurso, a las págs. 64-71; Véase el SUMAC, a la Entrada 153.

presentaron una *Moción de desestimación de demanda contra terceros.*[18]

Así las cosas, E.M.I. presentó una *Solicitud de Sentencia Sumaria.*[19] En su escrito, solicitó al tribunal de instancia que declarara ha lugar su petición y, en consecuencia, ordenara a la peticionaria al pago de las cantidades reclamadas y que, de no hacerse, se ordenara la venta en pública subasta de la propiedad hipotecada, para aplicar el importe de la venta al pago total o parcial de la deuda. En reacción, el Matrimonio Belsky-López presentó su oposición.[20]

Habiendo quedado sometidos las diferentes controversias antes reseñadas, el 19 de octubre de 2024, el foro de instancia emitió una *Sentencia Parcial y Resolución,* la cual fue notificada el día 21, del mismo mes y año.[21] Mediante la referida *Sentencia Parcial,* el foro primario declaró *Ha Lugar* la solicitud de desestimación presentada por BPPR y por los abogados Rangel y Machado Cortés, en torno a la demanda contra tercero instada por el Matrimonio Belsky-López.

Ahora bien, en el mismo dictamen, pero bajo el título de *Resolución,* el foro de instancia declaró *No Ha Lugar* la solicitud de desestimación instada por el BPPR en cuanto a la demanda contra tercero incoada por la peticionaria del título. El referido foro esbozó que, en el caso de marras, la peticionaria imputaba una negligencia directa o vicaria con relación a las representaciones y trabajos realizados para lograr el "short sale" de la propiedad, por lo que el Tribunal debía permitir que dichas alegaciones pudiesen probarse en su momento, de manera que no procedía la desestimación.

---

[18] Véase el SUMAC, a la Entrada 154.
[19] Apéndice del recurso, a las págs. 78-92; Véase el SUMAC, a la Entrada 177.
[20] Véase el SUMAC, a la Entrada 187.
[21] Apéndice del recurso, a las págs. 98-107; Véase el SUMAC, a la Entrada 201.

Conviene mencionar que, mediante un segundo dictamen, emitido y notificado en la misma fecha en la cual se emitió la *Sentencia Parcial y Resolución* antes mencionada, el tribunal *a quo* emitió una *Resolución* en la cual incorporó las determinaciones de hechos y conclusiones y acogió la parte dispositiva que coincide con lo antes relatado.[22] Igual curso de acción tomó el foro primario al emitir un tercer dictamen, en igual fecha, intitulado *Sentencia Parcial*, en el cual desestimó la causa de acción contra los abogados Rangel y Machado Cortés. Por otro lado, en el mismo dictamen, el tribunal de instancia desestimó la reconvención instada por la peticionaria en cuanto a E.M.I.[23]

De otra parte, huelga acentuar que ante el foro de instancia igualmente se encontraba pendiente una solicitud de sentencia sumaria instada por E.M.I., a la cual se opuso el Matrimonio Belsky-López, no así la aquí peticionaria. Así, pues, mediante *Sentencia Parcial* emitida el 19 de octubre de 2024, y notificada el 21 de octubre de 2024,[24] el tribunal *a quo* declaró *Con Lugar* la demanda y, en consecuencia, ordenó el pago de la suma adeudada en virtud del pagaré hipotecario en cuestión y de la referida escritura de hipoteca. Además, declaró al BPPR como poseedor y tenedor de buena fe del pagaré hipotecario en cuestión, y dispuso que el antedicho banco poseía un gravamen hipotecario sobre la propiedad objeto de este caso, en garantía de las sumas adeudadas.

Mediante *Orden*, emitida y notificada en igual fecha,[25] el tribunal de instancia concedió término a las partes para informar el estado de los procedimientos en torno a la demanda de coparte entre el Matrimonio Belsky-López y la aquí peticionaria, así como en

---

[22] Véase el SUMAC, a la Entrada 202.
[23] *Íd.*, a la Entrada 203.
[24] *Íd.*, a la Entrada 204.
[25] *Íd.,* a la Entrada 205.

cuanto a la demanda contra terceros entre la aquí peticionaria y el BPPR.

En desacuerdo con lo resuelto por el foro inferior, específicamente en cuanto al dictamen emitido el 19 de octubre de 2024, y notificado el día 21, del mismo mes y año, intitulado *Resolución y Sentencia Parcial*, el 6 de noviembre de 2024, el BPPR presentó una *Moción de Reconsideración.*[26] Esbozó que la causa de acción de autos versaba exclusivamente sobre una acción de cobro de dinero y ejecución de hipoteca presentada por E.M.I. en contra de la peticionaria. Por otra parte, le recordó al foro inferior que, hacía unos días, se había dictado sentencia en la cual se concedieron todos los remedios solicitados por E.M.I., *ergo*, se dispuso de todas las controversias instadas en la demanda. Arguyó que el BPPR no venía a responder en ninguna acción. Ello, puesto a que solo se alegó que el banco era responsable porque el estudio de título fue preparado por Milagros Cuevas Torres, Inc., pero esta no era parte en el pleito.

En el interín, el 21 de noviembre de 2024, el Matrimonio Belsky-López instó una *Moción solicitando se declare nula la sentencia dictada el 19 de octubre de 2024, y solicitando desestimación.*[27] Arguyó, en síntesis, que debía declararse nula la sentencia por la falta de inspección del pagaré hipotecario y, en consecuencia, desestimar la causa de acción instada por E.M.I.

Luego, el 4 de diciembre de 2024, BPPR compareció mediante *Moción para que se dé por sometida, sin oposición, Moción de reconsideración (Documento Núm. 208).*[28]

De ahí, mediante *Resolución* emitida el 7 de diciembre de 2024, y notificada el día 10, del mismo mes y año,[29] el foro de

---

[26] Apéndice del recurso, a las págs. 108-125; Véase el SUMAC, a la Entrada 208.
[27] Véase el SUMAC, a la Entrada 210.
[28] *Íd.,* a la Entrada 212.
[29] *Íd.,* a la Entrada 213.

instancia declaró *No Ha Lugar* la solicitud de relevo de sentencia solicitada por el Matrimonio Belsky-López.

Posteriormente, mediante *Sentencia Parcial* emitida el 17 diciembre de 2024, y notificada el día 18, del mismo mes y año,[30] el tribunal *a quo* reconsideró su dictamen emitido mediante *Sentencia Parcial y Resolución* del 19 de octubre de 2024, notificada el día 21, del mismo mes y año. En consecuencia, el tribunal de instancia desestimó la demanda contra tercero interpuesta por la aquí peticionaria contra el BPPR. En su dictamen, el foro primario concluyó que:

> Examinados los argumentos esgrimidos por el Banco Popular, surge inequívocamente que el incumplimiento con los términos y condiciones del préstamo hipotecario son atribuibles exclusivamente a la [peticionaria] dicha determinación es final y firme conforme a la Sentencia Parcial emitida el 19 de octubre de 2024. A su vez, de las alegaciones de [la peticionaria] no surge un nexo causal en cuanto a su reclamo con el tercero demandado ante sus propias admisiones aceptando haber suscrito el pagaré objeto de la controversia, haber suscrito la escritura de constitución de hipoteca y dejar de realizar los pagos correspondientes más aún la negligencia imputada es a una parte que no forma parte del pleito ante nuestra consideración.[31]

Poco más de dos (2) meses desde que se emitió la antedicha determinación, el 26 de febrero de 2025, E.M.I. presentó una *Solicitud de ejecución de sentencia*.[32] Expresó que la sentencia parcial, mediante la cual se declaró con lugar la demanda instada en este caso, había advenido final y firme. Adujo que la aquí peticionaria no había satisfecho la sentencia impuesta, por lo que solicitó que se ordenara la ejecución de la misma. Acompañó el petitorio con el correspondiente proyecto de orden y mandamiento.

En reacción, el 4 de marzo de 2025, la peticionaria instó una *Urgente oposici[ó]n a solicitud de ejecuci[ó]n de sentencia; en solicitud de que se deje sin efecto sentencia parcial dictada sin jurisdicci[ó]n; moci[ó]n de desestimaci[ó]n por falta de acumulaci[ó]n de parte*

---

[30] Apéndice del recurso, a las págs. 126-127; Véase el SUMAC, a la Entrada 214.
[31] Apéndice del recurso, a las págs. 126-127.
[32] Apéndice del recurso, a las págs. 128-132; Véase el SUMAC, a la Entrada 216.

*indispensable y sobre otros asuntos*.[33] Conviene mencionar que, en el antedicho escrito, salvo por su título, no se solicitó remedio específico alguno. De lo que se desprende, la peticionaria alegó que, el tribunal de instancia falló en desestimar la *Demanda* en contra Milagros Cuevas Torres, Inc., puesto a que esta era parte indispensable, de manera que se debía traer nuevamente al pleito para que participara activamente del litigio.

En reacción, el 26 de marzo de 2025, el Matrimonio Belsky-López incoó una *Moci[ó]n contestaci[ó]n a la moci[ó]n urgente oposici[ó]n a solicitud de ejecuci[ó]n de sentencia; en solicitud de que se deje sin efecto sentencia parcial disctada [sic] sin jurisdicci[ó]n por falta de parte indispensable y sobre otros asuntos*.[34] En términos generales, no solicitaron remedio alguno. Más bien, se limitaron a expresar su posición en torno a que la peticionaria, aun con las advertencias recibidas como parte del proceso de compraventa, manifestó y representó que la propiedad no tenía ninguna otra carga o gravamen que afectara la misma que no fuesen las que surgían del estudio de título.

Por su parte, el 8 de abril de 2025, E.M.I. presentó su réplica al escrito presentado por la aquí peticionaria.[35] Adujo que las alegaciones de la peticionaria no estaban dirigidas y/o relacionadas al cobro de dinero y ejecución de hipoteca, sino a acciones contra coparte y tercero. Puntualizó que, conforme a nuestro ordenamiento jurídico, en lo relativo a la acción de cobro de dinero y ejecución de hipoteca, estuvieron todas las partes indispensables en el pleito y que, cónsono a lo anterior, en torno a la solicitud de relevo de sentencia, la misma carecía de todo mérito. A tenor, solicitó se declarara sin lugar la solicitud de relevo de sentencia y de

---

[33] Apéndice del recurso, a las págs. 133-142; Véase el SUMAC, a la Entrada 218.
[34] Véase el SUMAC, a la Entrada 224.
[35] Apéndice del recurso, a las págs. 143-148; Véase el SUMAC, a la Entrada 229.

desestimación. Además, solicitó que se emitiera la correspondiente orden y mandamiento de ejecución, según fue solicitado.

En respuesta, mediante *Resolución* emitida el 8 de abril de 2025 y notificada el día 14, del mismo mes y año,[36] el tribunal recurrido declaró *No Ha Lugar* la solicitud presentada por la aquí peticionaria el 4 de marzo de 2025. Conviene mencionar que, mediante *Resolución* separada, pero emitida y notificada en igual fecha, el foro de instancia por segunda ocasión declaró *No Ha Lugar* la solicitud de la peticionaria.[37] De igual forma, mediante *Orden* emitida y notificada el 14 de abril de 2025, el tribunal *a quo* declaró *No Ha Lugar* al escrito presentado por el Matrimonio Belsky-López en torno a esta controversia.[38] En esa misma fecha, el Matrimonio Belsky-López presentó un escrito para enmendar su anterior solicitud,[39] a lo que el tribunal de instancia, mediante *Orden* notificada el 15 de abril de 2025, dispuso "Nada que proveer".[40] Véase Resolución emitida a esos efectos.[41]

De lo que sigue, el 14 de abril de 2025, el foro de instancia emitió y notificó la *Orden de ejecución de sentencia y venta de bienes*,[42] y emitió el correspondiente *Mandamiento*.[43]

En desacuerdo, el 13 de mayo de 2025, la peticionaria instó un recurso apelativo el cual, acogimos como uno de *certiorari*, por ser lo procedente en derecho. En el recurso, la peticionaria alzó los siguientes tres (3) señalamientos de error:

PRIMER ERROR:

La parte apelante respetuosamente somete a la consideración de este Honorable Tribunal de Apelaciones que cometió claro y manifiesto error de derecho el Honorable Tribunal A Quo al reconsiderar su original denegación de la moción dispositiva radicada por el Banco Popular y posteriormente declararla con lugar con el efecto de eliminar

---

[36] Apéndice del recurso, a las pág. 149; Véase el SUMAC, a la Entrada 230.
[37] Véase el SUMAC, a la Entrada 235.
[38] *Íd.*, a la Entrada 231.
[39] *Íd.*, a la Entrada 236.
[40] *Íd.*, a la Entrada 237.
[41] *Íd.*
[42] *Íd.*, a la Entrada 233.
[43] *Íd.*, a la Entrada 234.

del pleito a dicho tercero demandado, parte indispensable en este caso.

SEGUNDO ERROR:

Cometió claro y manifiesto error de derecho el Honorable Tribunal A Quo al no determinar, a la luz de las constancias de los autos del caso ante sí, el carácter de tercero registral de los co-demandados matrimonio Belksy – López, carácter el cual hace totalmente improcedente una acción ejecutiva sumaria hipotecaria y con lo cual quedaría únicamente una causa de acción personal crediticia. Esto requiere un pleito ordinario de cobro de dinero y la responsabilidad por la cual tiene que ser determinada por el tribunal en un juicio plenario luego del debido descubrimiento de prueba.

TERCER ERROR:

Cometió claro y manifiesto error de derecho el Honorable Tribunal A Quo al declarar con lugar una moción de ejecución de sentencia de carácter real en contra de un tercero registral protegido por nuestro ordenamiento de derecho registral inmobiliaria.

Mediante *Resolución* emitida el 15 de mayo de 2025, acogimos el presente recurso como uno de *Certiorari*, por ser lo procedente en derecho. Por otro lado, concedimos a la peticionaria hasta el 22 de mayo de 2025, para acreditar el cumplimiento con la Regla 33 (A) y la Regla 33 (B) del Reglamento de este Tribunal.[44] Además, concedimos a la parte recurrida hasta el 23 de mayo de 2025, para exponer su posición en torno al recurso.

Así las cosas, el 19 de mayo de 2025, compareció la peticionaria mediante una *Moción en auxilio de jurisdicción*, la cual fue denegada mediante *Resolución* de esa misma fecha. Por otro lado, mediante escrito separado, pero en la misma fecha, compareció la peticionaria para acreditar el cumplimiento con nuestra *Resolución* del 15 de mayo de 2025.

Luego, el 23 de mayo de 2025, compareció la parte recurrida mediante una *Moción de desestimación de recurso de certiorari por falta de jurisdicción*. Adujo que, en el presente recurso, la peticionaria compareció para solicitar la revisión de un dictamen que era final y firme, por lo que esta Curia no contaba con jurisdicción para entender en el mismo. A tenor, solicitó la

---

[44] 4 LPRA Ap. XXII–B, R. 40.

desestimación del recurso. Por otro lado, solicitó que, de no proceder la desestimación del recurso, se le proveyera término para presentar su posición en torno a los méritos del recurso. En respuesta, mediante *Resolución* emitida el 28 de mayo de 2025, concedimos a la peticionaria hasta el 30 de mayo de 2025, para expresarse en torno a la solicitud de desestimación. De igual forma, concedimos un término perentorio adicional a la parte recurrida, a vencer en el mismo término para expresarse en torno al recurso. Advertimos a las partes que, decursado dicho término, el caso quedaría perfeccionado para su adjudicación final.

De ahí, el 30 de mayo de 2025, compareció la peticionaria mediante *Moción solicitando breve extensión de horas o alternativamente sometiendo oposición esquemática resumida.* Mediante *Resolución* emitida el 3 de junio de 2025, dispusimos que este Tribunal evaluaría y resolvería la solicitud de desestimación. Además, denegamos la solicitud de término adicional interpuesta por la peticionaria.

Conviene mencionar que mediante *Moción Informativa* presentada por el BPPR el 9 de junio de 2025, se nos informó que posterior a la presentación del recurso ante nos, E.M.I. instó una *Moción Informativa* al TPI en la cual esbozó que no ejecutaría la sentencia debido a que recibió el pago total de todas las cantidades adeudadas relacionadas al préstamo hipotecario de este caso.[45]

Establecido todo lo anterior, y habiendo quedado el caso perfeccionado para su adjudicación, procederemos a disponer del presente recurso.

---

[45] *Moción Informativa* presentada por E.M.I. el 22 de mayo de 2025, ante el Tribunal de Primera Instancia. Véase el SUMAC, a la Entrada 243.

## II

### A. Expedición del Recurso de *Certiorari*

Los recursos de *certiorari* presentados ante el Tribunal de Apelaciones deben ser examinados en principio bajo la Regla 52.1 de las Reglas de Procedimiento Civil.[46] Esta Regla limita la autoridad y el alcance de la facultad revisora de este Tribunal mediante el recurso de *certiorari* sobre órdenes y resoluciones dictadas por los Tribunales de Primera Instancia. La Regla lee como sigue:

> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.[47]

> [...].

Por su parte, la Regla 52.2 (b) dispone en cuanto a los términos y efectos de la presentación de un recurso de *certiorari* que:

> Los recursos de *certiorari* al Tribunal de Apelaciones para revisar resoluciones u órdenes del Tribunal de Primera Instancia o al Tribunal Supremo para revisar las demás sentencias o resoluciones finales del Tribunal de Apelaciones en recursos discrecionales o para revisar cualquier resolución interlocutoria del Tribunal de Apelaciones deberán presentarse dentro del término de treinta (30) días contados desde la fecha de notificación de la resolución u orden recurrida. El término aquí dispuesto es de cumplimiento estricto, prorrogable sólo cuando medien circunstancias especiales debidamente sustentadas en la solicitud de *certiorari*.

> [...].[48]

Establecido lo anterior, precisa señalar que el recurso de *certiorari* es un vehículo procesal que permite a un tribunal de mayor

---

[46] 32 LPRA Ap. V, R. 52.1.
[47] *Íd.*
[48] 32 LPRA Ap. V, R. 52.1.

jerarquía revisar las determinaciones de un tribunal inferior.[49] A diferencia del recurso de apelación, el auto de *certiorari* es de carácter discrecional.[50] La discreción ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[51] A esos efectos, se ha considerado que "la discreción se nutre de un juicio racional apoyado en la razonabilidad y en un sentido llano de justicia y no es función al antojo o voluntad de uno, sin tasa ni limitación alguna".[52]

Por otro lado, la Regla 40 del Reglamento del Tribunal de Apelaciones esgrime que el Tribunal deberá considerar los siguientes criterios para expedir un auto de *certiorari:*

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición el auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. [53]

Precisa señalar que el Tribunal Supremo de Puerto ha establecido que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error

---

[49] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023)*; 800 Ponce de León v. AIG,* 205 DPR 163, 174 (2020).
[50] *Rivera Figueroa v. Joes's European Shop*, 183 DPR 580, 596 (2011).
[51] *Mun. de Caguas v. JRO Construction, Inc.* 201 DPR 703, 712 (2019); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434-435 (2013).
[52] *SLG Zapata-Rivera v. J.F. Montalvo,* supra, a la pág. 435.
[53] 4 LPRA Ap. XXII-B, R. 40.

manifiesto.[54] Quiérase decir que, no hemos de interferir con los Tribunales de Primera Instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que: (i) actuó con prejuicio o parcialidad, (ii) incurrió en un craso abuso de discreción, o (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[55]

Finalmente, advertimos que la denegatoria a expedir un recurso discrecional no implica la ausencia de error en el dictamen cuya revisión se solicitó, como tampoco constituye una adjudicación en sus méritos. Meramente, responde a la facultad discrecional del foro apelativo intermedio para no intervenir a destiempo con el trámite pautado por el foro de instancia.[56]

III

En el presente caso, la peticionaria aduce la comisión de tres (3) errores por parte del foro primario. En su *primer* error, la peticionaria plantea que el foro primario falló en desestimar la causa de acción presentada en contra del BPPR, puesto a que la referida institución bancaria era parte indispensable en el pleito. Por otra parte, en su *segundo* error, alega que el tribunal de instancia falló en no reconocer el carácter de tercero registral del Matrimonio Belsky-López, el cual hacía totalmente improcedente una acción ejecutiva sumaria hipotecaria. Por último, en su *tercer* error, la peticionaria plantea que el foro *a quo* incidió al declarar con lugar la petición de ejecución de sentencia incoada por E.M.I.

Establecido lo anterior, reiteramos que un tribunal apelativo no intervendrá con el ejercicio de la discreción de los Tribunales de Primera Instancia, salvo que se demuestre que actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de

---

[54] *Coop. Seguros Múltiples de P.R. v. Lugo*, 136 DPR 203, 208 (1994).
[55] *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).
[56] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96 (2008).

cualquier norma procesal o de derecho sustantivo.[57] Según expusimos en nuestra previa exposición doctrinal, el *Certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior.[58] A esos efectos, la naturaleza discrecional del recurso de *certiorari* queda enmarcada dentro de la normativa que le concede deferencia de las actuaciones de los Tribunales de Primera Instancia, de cuyas determinaciones se presume su corrección. Ahora bien, para determinar si procede la expedición de un recurso de *certiorari* será necesario que en el caso esté presente alguna de las razones de peso que establece la Regla 40 del Reglamento del Tribunal de Apelaciones.[59]

Tras evaluar minuciosamente el recurso presentado por la peticionaria, los cuales incluyen, en entre otros, una moción desestimatoria, y luego de una revisión de la totalidad del expediente ante nos y del expediente ante el foro primario disponible a través de SUMAC, es nuestra apreciación que no se configuran ninguna de las instancias que justificaría la expedición del auto de *Certiorari* al amparo de la Regla 40 del Reglamento del Tribunal de Apelaciones.[60] En específico, tomando en consideración el expediente y lo informado por el BPPR con posterioridad a la radicación del recurso, coincidimos en que esta no es la etapa del procedimiento más propicia para nuestra consideración; y, tampoco, estamos ante una determinación que configure abuso de discreción, prejuicio, parcialidad o error craso y manifiesto que amerite nuestra intervención revisora. En consecuencia, no atisbamos razón para intervenir con la determinación recurrida.

---

[57] *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).
[58] *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009).
[59] 4 LPRA Ap. XXII-B, R.40.
[60] *Íd.*

Lo aquí resuelto, advertimos, no tiene efecto de juzgar o considerar en los méritos ninguna de las controversias de derecho planteadas por las partes. Es decir, la denegatoria de esta Curia a expedir un recurso de *Certiorari* no implica que el dictamen revisado esté libre de errores o que constituya una adjudicación en los méritos.[61] Esto es así, ya que, como es sabido, una resolución de denegatoria de un auto de *Certiorari* no implica posición alguna de este Tribunal respecto a los méritos de la causa sobre la cual trata dicho recurso.[62] La resolución denegatoria simplemente es indicio de la facultad discrecional del tribunal revisor de negarse a revisar en determinado momento una decisión emitida por el TPI.[63]

IV

Por los fundamentos antes expuestos, se *deniega* la expedición del auto de *certiorari*.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[61] *Cacho Pérez v. Hatton Gotay,* 195 DPR 1, 12 (2016).
[62] *SLG v. Pauneto Rivera,* 130 DPR 749, 755 (1992).
[63] *Íd.,* a la pág. 756.